L. MAYER & Co. *v.* CHARITY MCLURE.

1. WRIT OF ERROR: PRIVITY BETWEEN ADMINISTRATOR DE BONIS NON AND ADMINISTRATOR IN CHIEF.—Under the statutes of this State, the administrator *de bonis non* is in full privity with the previous administrator, and he may prosecute or defend a writ of error to a judgment rendered in favor of or against the previous administrator without revivor.

2. SAME: SAME: PROCESS TO NOTIFY ADMINISTRATOR DE BONIS NON OF PENDENCY OF WRIT OF ERROR.—Where a writ of error is sued out after the death of the first administrator, and after the appointment of an administrator *de bonis non*, a *scire facias ad audiendum errores* may properly issue from this court, to notify the administrator *de bonis non* of the pendency of the writ here.

3. INSTRUCTIONS: NEW TRIAL: EXCEPTIONS.—Instructions which appear by the record to have been given or refused, are always open for consideration upon a motion for a new trial, without any special exceptions thereto having been taken, or reserved on the trial. See *Phillips* v. *Lane*, 4 How. (Miss.) 122; *McRaven* v. *McGuire*, 9 S. & M. 34.

4. INFANCY: DEFENCE OF: NOT WAIVED BY PROMISE TO A STRANGER.—A mere casual declaration of a person, made, after his arrival at majority, to a mere stranger, to the effect that he will pay, or intends to pay, a debt created by him during his infancy, will not bind the declarant; a promise by an adult to pay such a debt, in order to bind him, must be made to a person then authorized to receive payment, and to give a discharge to the promisor.

5. PRINCIPAL AND AGENT: SUB-AGENT: RATIFICATION.—The principal is liable to third persons in a civil suit for the frauds, misfeasances, or neglect of duty of his agent, and of those whom the agent employs about his business, though without his knowledge or consent; third persons, therefore, who treat with a sub-agent, as with one having authority, have no right, as against the principal, to set up that the agent is without authority to act for the benefit of the principal; and moreover the principal may ratify the act of such sub-agent, and thus secure the benefit of an act done by him.

6. SAME: SAME: INFANCY.—The plaintiff left a note with his agent for collection;

the agent directed his clerk to present the note to the debtor for payment; the clerk did present the note, and the debtor recognized his liability and promised payment. Held, that the clerk was not a mere stranger in the transaction, but was authorized to receive payment, and the promise made to him was as effectual to waive the defence of infancy, as if it had been made to the owner of the note.

ERROR to the Circuit Court of Claiborne county. Hon. Stanhope Posey, judge.

On the 22d February, 1856, plaintiffs filed their complaint against the defendant as administratrix of James W. McLure, founded on a note of her intestate, dated January 29, 1853, for $2505 45, payable, on the 1st December following, to the order of D. Hoffheimer, and indorsed by Hoffheimer to the plaintiffs.

The defendant denied generally the allegations of the complainant, and specially answered that her intestate was an infant when the note was made.

The plaintiffs replied, setting up an act of the legislature, approved March 2, 1854, and taking effect from its passage, by which the civil disabilities of the intestate were removed, and alleged a new promise and ratification of the note after the act took effect.

On these issues the cause came to trial at October term, 1857, when verdict and judgment were given for the defendant.

The bill of exceptions shows the introduction of the following proof by the plaintiffs.

1. The note sued and above described, and which was indorsed as follows :—

"Pay to the order of L. Mayer & Co.    Protest waived.    Natchez, May 12, 1854.

"D. HOFFHEIMER."

2. The Act of the Legislature of March 2, 1854, removing the civil disabilities of McLure, from the date of its passage.

3. The testimony of Dugald McCormick, who proved that he (the witness) was present when the note sued on was assigned by Hoffheimer to plaintiffs.    That plaintiffs afterwards left the note in the hands of Hoffheimer for collection, and that witness, then being

a clerk in the employ of Hoffheimer, by direction of said Hoffheimer, took said note and some other claims of Hoffheimer against McLure, to the said McLure, for payment. That witness presented said note to McLure, and demanded payment for L. Mayer & Co., the plaintiffs, and that said McLure promised to pay the same, but said he had not the money at that time. Witness could not recollect the precise time when he made such presentment, but thought it was in the early part of 1854, perhaps in January, February, or March. He did not recollect whether the written indorsement on the back of the note, was on it at the time he presented it to McLure.

Which was all the evidence in the cause.

The instructions given and refused, are fully stated in the opinion of the court.

The plaintiffs moved for a new trial, on the ground of the error of the court in granting the instructions of the defendant, and in refusing that asked by plaintiffs, and also because the verdict was contrary to law and evidence; which motion was overruled, and the plaintiffs below bring the case up by writ of error.

The action in the court below was against Charity McLure, administratrix of J. W. McLure, deceased, and judgment, as before stated, was rendered in her favor, in October, 1857. In January, 1858, the plaintiffs filed their petition before the clerk, asking for a writ of error, which was accordingly issued, in the usual form, without noticing any change in the parties. Upon the return of the writ in this court, the plaintiff in error suggested that Charity McLure had been removed from the office of administratrix, and that Thomas W. Broughton had been appointed administrator *de bonis non* of said J. W. McLure, and they moved for a *scire facias* against said Broughton; which was accordingly issued.

To this *scire facias*, Broughton, the administrator *de bonis non*, pleaded, that after the rendition of the judgment in the court below, and before the issuance of the writ of error, to wit, in November, 1857, the said Charity McLure was removed from office, and that he was appointed administrator *de bonis non*.

To this plea the plaintiff in error demurred, and the cause was submitted both on the demurrer, and the assignment of errors made on the proceeding in the court below.

On the demurrer:

*H. T. Ellett,* for plaintiffs in error.

If it is not necessary to revive against Broughton, then the case is properly before the court, between the original parties.

But if it is necessary, then how is it to be done?

Full privity is created between the administratrix and the administrator *de bonis non,* by the Act of 1846 (Hutch. Code, 855, art. 12; Rev. Code, 456, art. 124), and revivor of suits provided for.

A writ of error is not a new action, but only the continuance of an old one.    Bac. Abr. tit. Error.

It is very certain that a suit cannot be revived without a *scire facias,* for whenever a new party is sought to be brought in, whether to be benefited or charged, a *scire facias* is necessary.

Such is surely the rule in reference to administrators, in all cases under our statutes.

If a *scire facias* is necessary to bring in the administrator *de bonis non,* then there was no propriety in mentioning the fact of the change of the administrator, either in the petition, or in the writ of error, for that would not have accomplished any object.   The *scire facias* would still have been necessary, and Broughton could not have been made a party without it.

Situated as this case was, with a final judgment in favor of the defendant, the plaintiff could not have had a *scire facias* in the court below, for there was nothing there to revive.

If the clerk below could and ought to have issued a *scire facias* returnable to this court, then, he having failed to do so, it was competent and proper, in conformity with constant practice in regard to citations, for this court to supply the omission, and order the *scire facias* to issue here, as has been done.

*W. S. Wilson,* for defendant in error.

The writ of error was sued out in January, 1858, against Charity McLure, administratrix of the estate of James W. McLure.   It has been suggested that she has been removed from her office, and Broughton appointed administrator *de bonis non,* and *scire facias* has issued against him with a view to a revival of the suit.

He answers, that he was already administrator *de bonis non,*

when the writ of error issued, Mrs. McLure having been removed from her office in the month of November preceding.

How then can there be any revival? The very word, *ex vi termini*, imports that a suit has already been begun against a party which has been suspended by some change which has taken place since its institution, either by death, or some other cause, and which requires that a new party shall be brought in, to take the place of him who has been removed by death, or other cause.

Here, however, no change has taken place since the writ of error was brought; but all parties are in *statu quo* they were at the time it was issued.

It would be doing violence to language, and to the spirit of the statute allowing such a proceeding, to permit, under the guise of a revival, one party thus to be substituted for another in a suit.

On the assignment of errors:

*H. T. Ellett*, for plaintiffs in error.

We insist—

1. That McCormick was the agent of L. Mayer & Co. He had lawful and rightful possession of the note. He professed to act for L. Mayer & Co. He presented the note for them, and demanded payment in their name. Payment to him would unquestionably have discharged McLure. These propositions cannot be denied.

Then, if McCormick was the lawful holder of the note,—if he had a right, by virtue of his lawful possession, to demand payment, and if payment to him would have been a good payment, how can it be denied that he was lawfully the agent of L. Mayer & Co., though he had no express authority directly from them? They recognize his authority, and sue upon the promise made to him.

In the cases of *Goodsell* v. *Myers*, 3 Wend. 479; *Bigelow* v. *Granniss*, 2 Hill, 120, and *Hoit* v. *Underwood*, 9 N. Hamp. 437, which are the only cases cited in the note to Chitty on Contracts, 146 (8th Am. ed.), that bear upon this point, the doctrine is laid down negatively, that a mere declaration of an intention to pay, made by an infant to a stranger, having no interest or authority in the matter, is ineffective to ratify the contract; but there must be a promise to the party, or his agent.

What sort of agent, or how appointed, or what evidence of his appointment, are points not discussed in these cases.

Widely different is the present case. McCormick was not "a mere stranger, having no interest or authority;" nor was McLure's promise a loose "declaration of an intention to pay, made to a stranger." McCormick was armed with the best evidence of authority, to wit, the note itself; and payment to him would have extinguished the note. He was therefore of necessity, in law, the agent of Mayer & Co.,—no matter how indirectly his authority might have come.

2. We insist that McCormick was lawfully appointed agent of Mayer & Co.

The rule, that an agent cannot delegate his authority, is not universal. "The true doctrine which is to be deduced from the decisions is (and it is entirely coincident with the dictates of natural justice), that the authority is exclusively personal, unless, from the express language used, or from the fair presumptions growing out of the particular transaction, or of the usage of trade, a broader power was intended to be conferred on the agent." Story on Agency, p. 16, sec. 14.

Now no special authority was in this case conferred on Hoffheimer. The note was merely left with him "for collection." He was not appointed to make a presentment of the note to McLure, and demand payment, but was authorized to take any and all steps, and do any and all things, which, in his judgment, were necessary or proper for the collection of the note. It does not expressly appear in the record, that Hoffheimer was a merchant; but it does appear that he resided in Natchez, and had at least one clerk in his employ, and that he sent this clerk out to collect the debts due to him. Is it not a fair intendment that he was authorized to do for Mayer & Co., in reference to this note, what it was usual in his trade to do with all other collections? A factor, to whom goods are consigned,—a broker, employed to obtain freights, or to effect insurance, has a right to act through all the usual sub-agents employed in such business; and these sub-agents, thus employed, are the lawful agents of the principal, and are lawfully delegated to do whatever is required of them in the business, though employed by

the agent himself, without the knowledge or express consent of the principal.   Story on Agency, *ut sup*.

Then, if a note is left with a merchant for collection, may he not act by the usual means by which he makes his own collections? And are not the usual agents whom he employs for that purpose, *pro hac vice*, also the agents for those who have intrusted him to make collections for them?

Indeed, what is the extent of the authority conferred by leaving a note with another "for collection," generally, without limitation or restriction?   Does it not import full discretion to adopt the proper means, and employ the proper agents, to compel the payment of the money?  or is it enough to wait quietly until the money shall be voluntarily tendered?   Has such an agent authority to put the claim in suit?   This will hardly be denied.   Then he has authority to employ an attorney-at-law for the principal; and an attorney-at-law thus employed, will be the attorney of the common principal, and not of the agent.   The bringing of a suit is but a legal demand of a debt; and then it follows that the agent "for collection" has a right to employ an attorney-at-law to make a legal demand of the debt.   But suppose the attorney-at-law goes to the debtor, before bringing suit, and demands payment;—he would surely have the right to receive payment and give a discharge, as agent for the principal, though his authority is derived only from the agent for collection.   And if the debtor, having been an infant when the contract was made, should, when such demand is made, promise payment at a future day, that would be a promise to an agent of the creditor, and, if made after full age, would ratify the promise.

The position of the opposite party involves the denial of the right of an "agent for collection," generally, to put the claim in suit; or, if that power is admitted, then it assumes the absurdity, that if the agent "for collection" sends a licensed attorney-at-law to make the demand, a promise made to such attorney would be good to ratify the infant's contract; but if he send any other person but an attorney-at-law, a promise to such person will be void and ineffective.

And again.   Suppose a claim placed in the hands of an attorney-at-law for collection, and that such attorney, instead of going in

person to the debtor, should send a clerk or messenger, usually employed by him for that purpose, will it be pretended that a promise to such clerk or messenger is not a promise made to " an agent" of the creditor, of which he can take advantage ? And yet there can be no distinction made in principle between such a case and the present.

But we are met now by the objection, supposed to be sustained by recent rulings of the court, that the court cannot notice the question arising on the instructions, because the record does not show that a bill of exceptions was taken before the jury retired, or at least that the exception was then taken and reserved. But this cannot be well founded.

The uniform practice of all the counsel in the region from whence this cause comes, has always been, not to except on the trial to instructions, but to raise the question on motion for new trial, when they have had time respectfully to consider the views expressed by the court, and to prepare themselves for proper discussion of them, with a view to show the judge that they are erroneous. This is a decorous and respectful practice. Counsel can rarely comprehend with accuracy the bearing of legal propositions, suddenly announced, without time to give them examination; and it certainly has the appearance of rudeness and disrespect, to challenge the decisions of a court as soon as they are rendered, and to except to them, when it may be that they are right. And it must surely lead to such a practice, if counsel are not permitted to invite the judge to reconsider his opinions, unless they do challenge them on the instant.

The practice that has been indulged in, of waiting for the motion for a new trial, before taking the exceptions, has this further advantage,—that if the judge changes his opinion after argument, no exception will be necessary at all.

The practice, too, is based upon good foundations; for it is a well-settled rule of practice at common law, in the English courts, where no writ of error lies upon a motion for a new trial, that if a party takes a bill of exceptions on the trial, he shall not be heard to move for a new trial on any ground covered by it, unless he will expressly waive and abandon his bill of exceptions. 2 Tidd Pr. 863, 913 (3d Am. ed.); 2 Chitty's Rep. 272.

But our Act of 1830, Hutch. Code, 885, introduced a new practice, and authorized the parties against whom a decision had been made, on a motion for a new trial, to " except to the opinion of the court," and to reduce " the reasons offered for said new trial," &c. to writing, and thus make them a part of the record, and enabled the party to assign error thereon.

This statute soon underwent adjudication upon this express question, whether on error upon a motion for a new trial, it was necessary that it should appear that the party *excepted during the trial*. In *Phillips* v. *Lane*, 4 Howard, 122, Judge Sharkey goes into the question, and holds that no such exception need be shown. In regard to questions of the improper admission of evidence, he says it must be shown that the admission of the evidence was *objected to* on the trial, but that no *exception* need be taken except after the motion for a new trial. And he adds, " But the misdirection of the judge is *always* open for consideration on a motion for a new trial."

Eight years afterwards, that case was deliberately reaffirmed in *McRaven* v. *McGuire*, 9 S. & M. 47.

Here are two distinct adjudications, one of them twenty years old, settling the practice under this statute, and ruling against the necessity of any exception until the decision of the motion for new trial.

Surely counsel may repose upon a rule thus established, and need not fear being turned out of court for conforming to it, especially when the cases have never been overruled or questioned.

But the question does not even rest here, for by the Act of 1846, Hutch. Code, 893, the instructions given or refused, when noted or indorsed by the clerk, are made a part of the record, on appeal or writ of error, without any bill of exceptions. They are not made part of the record in the court below, but only in this court, on appeal or writ of error.

For what purpose is this? Surely that error may be assigned upon them. And in cases where it was not necessary for the court to see the testimony, to enable it to decide upon the propriety of the instructions, would the court hesitate to examine the instructions contained in the record in pursuance of this statute?

And if the bill of exceptions merely contained the evidence

necessary to an understanding of the instructions, without embodying the instructions themselves, or showing that they were excepted to, would not the court consider them? It could not refuse to do so, without denying all effect to the statute.

The court have properly decided that this act does not apply to criminal cases, being expressly confined to "civil suits," and therefore that instructions are not part of the record, nor can error be assigned of them, in criminal cases, unless they are made so by a bill of exceptions; but the very language of these decisions shows that no such rule was intended to be applied in civil cases.

In the case at bar, the instruction asked by the plaintiff was refused, and antagonistic instructions given for the defendant; surely it cannot be inferred that he waived his instruction, especially when he instantly moved for a new trial on the ground of its refusal.

But at all events, disregarding the instructions entirely, if we must, the verdict was against the evidence, for on the proof the plaintiff was entitled to recover, and therefore the judgment ought to be reversed.

*W. S. Wilson,* for defendant in error.

I. It is submitted that the new trial was properly refused. It was conceded that the intestate, J. W. McLure, was an infant when the note sued on was made. The plea of infancy was sought to be avoided, by showing that the contract had been ratified after the act was passed, removing the infant's disability. The whole burden of proof was upon the plaintiffs to show this. Did they show it?

The act was passed March 2, 1854. The ratification, to have been effective, must have been after that date. But the witness, McCormick, expressly stated that he could not recollect when he presented the note to McLure, but "thought it was in the early part of the year 1854, perhaps in January, February, or March." The written indorsement on the note bears date May 12th, 1854; and it may be argued that this ascertains, with sufficient certainty, that the note was presented by the witness after the 2d of March, inasmuch as he stated he was present when the note was assigned.

But it must be remembered that the witness distinctly said, that he could not recollect whether the indorsement was on the note when it was presented. If, when he said he was present when the note was "assigned," he meant that he was present when the written transfer was made, surely there could have been no doubt, that it was on the note when presented. Palpably, though, when he talked of the assignment, he meant its delivery to plaintiffs, and not its written transfer. It was not proved, therefore, that the presentment was made to McLure after May 12th, 1854, the date of the indorsement. But it was proved, that the presentment was made "in January, February, or March," before the date of the indorsement appearing on the note itself.

Surely this evidence was altogether insufficient to sustain the replication, that the infant had ratified the contract after the enabling Act of March 2, 1854, was passed. The burden of showing this, clearly and beyond a doubt, devolved upon the plaintiffs. But upon the evidence offered by them, it was utterly impossible that the jury could have found the issue in their favor.

Although, then, this court may be of opinion that the Circuit Court erred in its charges given for the defendant, yet its action in refusing a new trial must be sustained. For, over and over again, has it been decided that, however patent may be the errors committed by a Circuit Court during the progress of a trial, a new trial will not be granted, if substantial justice has been done, and if it be obvious that a second must, on the merits, result as did the first. *Dunlap* v. *Edwards*, 29 Miss. R. 41; *Simpson* v. *Bowden*, 23 Ib. 524; and the numerous cases to same point, cited in the late case of *Mask* v. *The State*, 3 George, 405.

II. If the charges given for the defendant were erroneous, advantage cannot now be taken of the error, because the record shows that no exception was taken at the time, and plaintiffs must be deemed to have acquiesced in them, as giving the law of the case. *Standley* v. *Miles & Adams*, lately decided.

Were this not so, it is insisted that the charges given were correct.

Upon the subject of the ratification of the contracts of infants, and that new promises or ratifications by them, differ altogether from promises or acknowledgments to avoid the effect of the Statute

of Limitations, see same book, citing 1 Pick. 200; 11 Serg. & R. 305–11; 3 Barr, 408.

It must be made to the party himself or his agent; and if made to a stranger, it is ineffective. *Goodsall* v. *Myers*, 3 Wend. 479; *Bigelow* v. *Graniss*, 2 Hill's N. Y. 120; *Hoit* v. *Underhill*, 9 N. Hamp. 437; 10 Ib. 220.

Here the alleged promise was made, not to the plaintiffs or their agent, but to McCormick, a stranger, who had no interest or authority in the matter. It may be said that, being agent of Hoffheimer, he was sub-agent of plaintiffs. The answer is,—delegated authority cannot be delegated, although a sub-agent may sometimes rightfully represent a principal. Yet it is only where a principal gives authority to employ him, or where it is shown that he has been substituted in accordance with a known custom or usage of trade. Story's Agency, §§ 201–386.

McCormick was agent of Hoffheimer, and not of plaintiffs. They, upon the evidence in the case, would have been bound by no act which he could have done, in dealing with McLure. He was, therefore, a stranger in the business, and it does not appear that plaintiffs ever regarded him otherwise. There is no room, therefore, for the application of the doctrine of the ratification of acts done by assumed agents.

HARRIS, J., delivered the opinion of the court.

This cause was submitted to us on demurrer to the answer of Thomas W. Broughton, administrator *de bonis non* on the estate of James W. McLure, deceased, filed in this court, to the *scire facias* against him. The point involved in this demurrer, was considered and determined in connection with a motion involving the same principle, in the case of *The New Orleans, Jackson, and Great Northern Railroad Co.* v. *Thomas Rollins, Administrator, ante,* and decided a few days since. It is there held, that the administrator *de bonis non*, under our statutes, being in full privity with the previous administrator, may prosecute a writ of error here without revivor; that a writ of error will equally lie *against* or *for* such administrator; and that a *scire facias ad audiendum errores* may be properly issued from this court, to notify the administrator *de bonis non* of the pendency of such writ here, sued out after the

death of the first administrator, and after the appointment of the administrator *de bonis non.* For the authorities and reasoning on which the decision rests, reference is made to the opinion in that case. The demurrer to the answer to this *scire facias* is therefore sustained.

The cause is now submitted to us on the errors assigned.

It appears from the record that this suit was instituted on the 22d February, 1856, against Charity McLure, administratrix of James W. McLure, deceased, on a note executed by him on the 29th January, 1853, payable to D. Hoffheimer, and indorsed by him to plaintiff. Defendant pleaded infancy, and a general denial.

Plaintiff replied, setting up an act of the legislature, March 2d, 1854, taking effect from its passage, and removing the civil disability of the minor (defendant's) intestate, and a new promise after the date of the act; and the cause was submitted to the jury on these issues.

The note and indorsement were read to the jury, and the act of the legislature referred to above. Dugald McCormick was then introduced as a witness, who proved that he was present when the note was indorsed to plaintiffs; that plaintiffs afterwards left the note with Hoffheimer, the payee, for collection; that witness, being a clerk of Hoffheimer, was directed by him to present said note to McLure for payment, which witness did, and demanded payment thereof for the plaintiffs; that McLure promised to pay the same. Witness could not recollect the time, but thought it was in the early part of 1854, perhaps in January, February, or March; did not recollect whether the indorsement on the back of the note was on it at the time he presented it, or not. This was all the evidence.

On this state of facts, the court was asked by counsel for defendant to instruct the jury:

1. That if they believed from the evidence, that the note had been indorsed by Hoffheimer to plaintiffs, at the time it was presented to McLure by McCormick, then any promise by McLure to pay said note is not binding, unless the promise was made to Mayer & Co., or an agent of theirs.

2. If Hoffheimer was an agent of Mayer & Co., plaintiffs, he had no right to delegate the agency to McCormick, the witness.

3. That the jury, before they can find a verdict for plaintiffs,

must be satisfied, from the evidence, that the ratification of the note was made after the act of the legislature was passed.

These instructions were given. An instruction was asked by the plaintiff, as follows: " If the jury believe from the evidence, that after the assignment of the note sued on, the plaintiffs left the note in the hands of Hoffheimer for collection, and that after the passage of the Act of March 2, 1854, Hoffheimer sent his clerk, McCormick, to McLure, to demand payment of said note, and that said clerk did so present said note and demand payment thereof for the plaintiffs, and said McLure promised to pay the same, such promise was binding on McLure in this action."

This instruction was refused. A verdict was rendered for defendant. Motion for new trial, on the ground of error in the court, in giving and refusing the above instructions, and because the verdict was contrary to the law and evidence.

The record shows that the instructions were severally marked given and refused, under the statute, and so were made a part of the record. No exception was taken to the instructions on the trial. They were relied on in the motion, as cause for new trial.

A preliminary question is made, as to the necessity of making formal exception, *on the trial,* to the instructions given or refused by the court.

"A party will not be heard to move for a new trial, for the admission of improper evidence, when such evidence was permitted to go to the jury without objections; under such circumstances, the objection is considered as waived, unless it be made and noted when the evidence is offered. But the misdirection of the judge is always open for consideration, on a motion for a new trial." Chief Justice Sharkey, in *Phillips* v. *Lane,* 4 How. Miss. R. 122; *McRaven* v. *McGuire,* 9 S. & M. 34.

"Before the adoption of the statute on the subject, no instruction of the court to the jury would be noticed by this court, unless the party objecting, did so by a bill of exceptions, signed by the judge. Now it is sufficient if the instructions are indorsed by the clerk as given and refused. It would also be sufficient, if the record stated directly, that the charges objected to were given or withheld. Here there is no such statement." Chief Justice Smith, in *Field* v. *Weir,* 28 Miss. R. 68.

It seems, therefore, to be settled by the decisions of this court, that *instructions* which appear in the record to have been "given or refused," are always open for consideration, upon a motion for a new trial.

The first assignment of error presents the question, whether a promise, made to a clerk of an agent for the collection of a note, who has been directed by the agent to present it to the maker for payment, and who, at the time of such presentment, discloses the fact that he holds and presents the note for the benefit of the true owner, is either to be regarded as being made to a mere stranger, or comes within the rule, *delegatus non potest delegare ?*

The principle asserted in the authorities cited by the counsel, that a mere casual declaration of the infant to a stranger, having no interest or authority, that he intends to pay, or that he will pay, constitutes no promise binding in law, is fully recognized. It results from the simple consideration, that no obligation can be created in law, where there is no such *intention* by either the promisor or promisee. The cases cited are widely different from the case at bar. Here the party demanding payment was, at the time, in the lawful possession of the note, for a lawful purpose. He might have received the money, and delivered up the note; and there can be no pretence, that such payment to him, and delivery of the note to the maker, would not have been a satisfaction by the maker. He was not then a mere stranger, but an agent of Hoffheimer, authorized to present the note and demand payment—to receive payment and discharge the maker; and to this extent he was the subagent of the plaintiff.

The principal is liable to third persons, in a civil suit for frauds or misfeasances, or neglect of duty in his agent, or *in those whom his agent employs, though the principal did not authorize or assent to it.* The liability runs through all stages of the service. Story on Agency, ch. 17, §§ 452, 454; 2 Kent's Com. 9th edit. 856, note (a).

The principle, that an agent cannot delegate his authority, is founded upon the special trust and confidence reposed by the principal in the personal skill and integrity of the agent. *The agent*, therefore, has no authority to turn *his principal* over to another,

of whom he knows nothing, but remains responsible to his principal, in all such cases of sub-agency.

But it by no means follows that *third persons*, who deal with sub-agents, knowing the agency, are to be absolved from acts. or contracts made by such agents, in the name of the principal. We have just seen, that while the original agent is liable to his principal for the acts or misconduct of sub-agents employed, without the authority of the principal, the *principal is liable to third persons.* As third persons, therefore, treat with the sub-agent, under the law, as with one having full authority, *they* have no right, as against such principal, to set up that the sub-agent is without authority to act *for the benefit* of the principal.

The principal may ratify the act for his benefit, and may even sue the sub-agent for money collected by him, under such circumstances. 1 Peters R. 25; 1 How. U. S. R. 234; 3 Ib. 763. Cited in 2 Kent, 856, note (a).

As between *principal and agent*, the rule we are considering is of general obligation. There are exceptions, however, even here, as when the business of the agency in its nature requires sub-agents. See 1 Tuck. Lect. 90, and authorities cited.

But third parties, whose rights cannot be affected by such delegation of agency to a sub-agent, cannot be heard to complain.

It follows, that the promise made by McLure to McCormick, the witness and sub-agent of plaintiffs, if made after the removal of the disability of infancy, was obligatory upon him.

The instructions of the court assumed the contrary to be the law. This assignment of error was, therefore, well taken.

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.